UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO:_____

ROBERT ELLIS,

    Plaintiff,

vs.

KINEDYNE, LLC,

    Defendant,
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, ROBERT ELLIS (hereinafter referred to as "ELLIS"), sues the Defendant, KINDYNE, LLC a Delaware Limited Liability Company (hereinafter referred to as "KINEDYNE") and states as follows:

1. This is an action for damages being brought pursuant to the Americans With Disabilities Act Amendments Act of 2008.

## PARTIES

2. The Plaintiff, ELLIS, is an individual over the age of eighteen (18) years of age, residing in Fleming Island, Clay County, Florida.

3. The Defendant KINEDYNE, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 3040 US Highway 22 West, Suite 150, Branchburg, NJ 08876.

4. At all times material hereto, ELLIS was employed by KINEDYNE as the Product Manager-Cargo Access Technologies, which was a home-based position working out of Fleming Island, Florida

**JURISDICTION & VENUE**

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1331, as this Court has original jurisdiction over federal questions arising under the Americans with Disabilities Act.

6. The Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds the jurisdictional threshold, exclusive of costs, it is between citizens of different states, and because the Defendant has certain minimum contacts with the State of Florida such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

7. Plaintiff also seeks declaratory relief as authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue in the United States District Court for the Middle District of Florida is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district, and because Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

9. On or about May 23, 2022, ELLIS timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") against KINEDYNE for discrimination in employment. The EEOC issued its Dismissal and Notice of Right to Sue on June 13, 2022 for violation of the Americans with Disabilities Act. A copy of the Right to Sue letter is attached as Exhibit A.

## COUNT I – DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

10. The Plaintiff readopts and restates the allegations contained in paragraphs one (1) through nine (9) as if more fully set forth herein.

11. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

12. KINEDYNE is a covered employer to which the ADA applies.

13. At all times material hereto, ELLIS suffered from COPD and Asthma.

14. Because COPD and Asthma substantially limits at least one of Plaintiff's major life activities ELLIS is an individual with a disability under the ADA.

15. Despite having COPD and Asthma, ELLIS was fully qualified to be Product Manager-Cargo Access Technologies and could perform all the essential

3

functions of the position.

16. ELLIS began working for KINEDYNE on July 16, 2021. When he was hired, KINEDYNE failed to provide ELLIS with any training as to the processes the Defendant expected him to utilize in order to perform his job duties. One of the tasks assigned to ELLIS was for him to create a training program for his department. In order to accomplish that task, ELLIS had to utilize internal sources to essentially become self-taught by seeking information from Operations and Management Team from the factory in Mexico via emails and Microsoft Teams video calls.

17. In August 2021, ELLIS informed his manager, Roger Perlstein, that he suffered from certain health conditions, being COPD and Asthma. At that time, ELLIS was not experiencing any health related conditions that interfered with his ability to perform his job duties.

18. In January 2022, while on a business trip to Boise, Idaho, ELLIS contracted Covid-19. Due to his pre-existing health condition, ELLIS has a more severe case of Covid-19 which had a negative impact on his breathing capacity. In addition, ELLIS had longer lasting side effects from Covid-19 which prolonged his recovery time.

19. Between July 16, 2021 and January 2022, there were no complaints about ELLIS' performance.

20. In February 2022, while attempting to travel from Jacksonville, Florida to Grand Rapids, Michigan for a business meeting, ELLIS suffered a medical setback. ELLIS' flight had a layover in Washington, DC. When he was boarding the second leg of flight from Washington to Grand Rapids, he became very short of breath. The airline crew called the paramedics who examined him and ultimately recommended to him that he not to fly that day.

21. ELLIS notified his manager Perlstein that he was unable to fly due to medical reasons and that the next available flight would have him arrive after the scheduled meeting time in Grand Rapids. ELLIS further advised Perlstein that he booked a hotel in Washington and would need to spend the night.

22. The next morning ELLIS was still suffering breathing complications and would not be able to fly to Grand Rapids. ELLIS ended up needing to rent a car to drive back to Jacksonville from Washington. ELLIS called Perlstein on the way back to update him on his situation and again reiterated he was not able to make the flight the day before due to a medical emergency.

23. In March 2022, ELLIS attended a trade show in Orlando. While traveling with two other employees, Bob Deslinger (Sales Manager), Charlie Rist (Salesman), ELLIS parked in a disabled parking spot, put his disabled parking placard on display, and walked from the parking garage to the team business dinner at a slower pace than his peers.

24. On or about March 14, 2022, a few days after the Orlando trip, ELLIS was called into a meeting with his supervisor Perlstein and Eric Sorensen, the HR Representative, to be advised that he was being placed on a performance improvement plan ("PIP"), with 60 days to improve. Prior to this meeting, ELLIS had not been told that there were any deficiencies in his performance.

25. Although the final numbers for the first quarter of 2022 had not been calculated at the time the PIP was issued, ELLIS had already surpassed his sales goals for the quarter and had completed 4 out of 6 of his annual goals.

26. On March 28, 2022, two weeks after the PIP had been issued, ELLIS traveled to Atlanta for a four (4) day business trip with Perlstein, Deslinger and Rist. During this business trip, ELLIS did not have any major health issues, but did walk slower than his colleagues due to his COPD, Asthma, and lingering effects of Covid-19. Perlstein made a negative comment to ELLIS regarding the speed at which he was moving, which ELLIS interpreted to be a negative comment about his health condition.

27. Between April 10 and 15, 2022, ELLIS traveled to Columbus and Cleveland, Ohio for various meetings with customers with no issues. ELLIS had an additional 6 business trips lined up within the next 45 days.

28. On April 28, 2022, ELLIS was called into a meeting with Perlstein and Sorensen and told that he was being terminated due to poor performance.

29. At the time of his termination, ELLIS had already surpassed his accumulated year to date sales goals through March 2022 by 389% and was on track to far exceed the annual sales goals.

30. KINEDYNE's stated reasons for terminating ELLIS were pretextual.

31. KINEDYNE terminated and disqualified Plaintiff from employment solely because Plaintiff suffers from breathing issues related to his COPD and Asthma and KINEDYNE perceived him to be disabled.

32. KINEDYNE'S termination and disqualification of Plaintiff on the basis of his disability violated the ADA.

33. As a result of KINEDYNE's actions, ELLIS has suffered and will continue to suffer both economic and non-economic harm.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, ROBERT ELLIS respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant KINEDYNE discriminated against ELLIS on the basis of health conditions and difficulties breathing;

b. Appropriate injunctive relief, including but not limited to reinstatement of ELLIS' position with KINEDYNE and an order restraining KINEDYNE from engaging in further discriminatory conduct of the types alleged in this Complaint;

c. Back pay in an amount to be determined at trial;

d. In the event reinstatement is not granted, front pay;

e. Compensatory and consequential damages, including for emotional distress against defendant KINEDYNE;

f. Punitive damages against defendant KINEDYNE;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Attorneys' fees and costs of this action; and

i. Any such further relief as the Court deems appropriate.

**TRIAL BY JURY DEMANDED.**

Respectfully submitted on this 9th day of September, 2022.

/s/ Barbra A. Stern
Barbra A. Stern, Esquire
Fla. Bar No. 526576
Law Offices of Barbra Stern PA
808 E. Las Olas Blvd. Suite 102
Fort Lauderdale, FL 33301
Phone: (954) 743-4710
Direct Dial (954) 239-7249
barbra@sternlawoffice.com
**ATTORNEY(S) FOR PLAINTIFF**